# IN THE UNITED STATE DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# FLORENCE DIVISION

| | |
|---|---|
| Louis Clay Tharp,<br><br>   Plaintiff,<br><br>vs.<br><br>Media General, Inc., Media General Operations, Inc. d/b/a WBTW CBS News 13 and the Morning News, Media General Communications Holdings, LLC d/b/a SCNOW. com, Mason Snyder and Nicole Boone,<br><br>   Defendants. | C.A. No.: 4:11-cv-1819-TLW<br><br>**Defendants' Memorandum in Support of Motions for Judgment as a Matter of Law and Notwithstanding the Verdict and to Alter Judgment** |

Defendants present this Memorandum in support of their Motions for Judgment as a Matter of Law and Not Withstanding the Verdict and to Alter Judgment. For the reasons set forth herein and in the extensive discussion of these issues in the Defendants' Motion to Dismiss, Motion for Summary Judgment, and the memoranda of law in support thereof, which Defendants hereby incorporate and reiterate, the Court should grant judgment in favor of the Defendants.

### I. BECAUSE THE JURY FOUND THAT THE INDIVIDUAL DEFENDANTS, MASON SNYDER AND NICOLE BOONE, ARE NOT LIABLE TO THE PLAINTIFF, THE CORPORATE DEFENDANTS CANNOT BE HELD LIABLE.

The *respondeat superior* doctrine precludes liability against the master when the servant is exonerated. *City of Los Angeles v. Heller*, 475 U.S. 796 (1986); *Kirby v. Gulf Refining,* 175 S.E. 535 (S.C. 1934); *Jones v. Southern Rwy. Co., et al.*, 106 S.C. 20, 90 S.E. 183 (S.C. 1969).[1] Because Snyder and Boone were determined to have not defamed Tharp, it is illogical that the corporate Defendants can

---

[1] The Court applies South Carolina substantive law in this diversity case.

be held liable. Snyder and Boone are employees of the Defendant Media General Operations Inc.[2] Under the doctrine of *respondeat superior*, the Defendant corporate group could only be liable to Tharp if either or both of Snyder and Boone were liable to Tharp for defamation. They were not.

The South Carolina doctrine of *respondeat superior* is well established and unyielding in factual scenarios such as this one. The Courts have consistently held that:

> "Undoubtedly, as the appellant contends, the law is that where a master and his servant are sued together for the same act of negligence or willful tort, and the master's liability rests solely on the servant's conduct, a verdict against *the master alone* is illogical and cannot stand." Citing *Johnson v. A.C.L.R.R. Co.*, supra."

*Kirby v. Gulf Refining,* 175 S.E. 535 (S.C. 1934). In the case of *Jones v. Southern Rwy. Co., et al.,* the Court reasoned,

> "The verdict is illogical and cannot stand, as no delict of the company was proved other than through and by the agency of Parks and Gilliard, one or both. The company's liability is predicted solely upon the acts or omissions of one or both of them; and if neither of them is liable, it necessarily follows that the company is not. It would be unreasonable to say that the servant did nothing wrong, but, nevertheless, his master is liable, when the only wrong charged against the master is that of the servant."

106 S.C. 20, 90 S.E. 183. Accordingly, judgment should be entered for the corporate Defendants on all counts.

## II. THARP DID NOT PRESENT SUFFICIENT EVIDENCE TO PROVE COMMON LAW MALICE.

Tharp did not provide evidence at trial to prove that any of the Defendants acted with common law malice. He bore that burden. To prove common law malice, Tharp was required to prove "that the defendant was accuated by ill will in what he did, with the design to causelessly and wantonly injure the plaintiff; or that the statements were published with such recklessness as to show a conscious indifference toward Plaintiff's rights." *Jones v. Garner*, 250 S.C. 479, 488, 158 S.C. 2nd 909, 914 (1968); *Erickson v. Johns Street Publishers*, LLC, 368 S.C. 444, 466, 629 S.E.2d 653, 665

---

[2] There was no evidence that the other corporate Defendants employed Snyder or Boone, or were otherwise liable. They should be dismissed for this reason, also; the Defendants' motions include this ground.

2

(2006). The jury agreed that the Defendants did not act with common law malice when it returned a verdict in favor of Snyder and Boone.

The overwhelming evidence at trial showed that the Defendants did not act with common law malice and that the reporting was within the fair report and neutral reporting privileges. The prosecutor, Candace Lively, testified unequivocally that the broadcast and article at issue were true. Also, she continued to prosecute Tharp for almost a year after his arrest, obviously believing that Tharp committed the crimes for which he was arrested. The Defendants' publications were entirely consistent with the police reports and other government records.[3] The official reports included graphic descriptions of the allegations against Tharp. Had the Defendants harbored malice against Tharp there was much more inflammatory information available to them that they could have published, but they did not. The Defendants did not act with common law malice.

### III. THE EVIDENCE SHOWED THAT THE BROADCAST AND ARTICLE WERE SUBSTANTIALLY TRUE.

The overwhelming evidence and testimony at trial showed that the broadcast and article about which Tharp complained were substantially true. The evidence showed that Tharp was arrested for the crimes stated in the publications and that the publications were consistent with the governmental records. The video surveillance confirmed that Tharp was in the locker room with the alleged victim and the prosecutor confirmed that the article and broadcast were substantially true.

The police reports, arrest records and other official records show that the broadcast and article were substantially true at the time they were published. Substantial truth is the standard and Tharp had the burden to prove that the publications were not substantially true. *See Ross v. Columbia Newspapers, Inc.,* 266 S.C. 75, 80, 221 S.E. 2d 770, 772 (1976); *Dauternman v. State-Record Co.*, 249 S.C.

---

[3] The official government records contained nothing about video surveillance confirming or not confirming the presence of an alleged accomplice gunman. Accordingly, this was not privileged information. Nevertheless, the Defendants included it in the article, which was a benefit to Tharp. His complaint that it was not included in the broadcast is unjustified.

512, 514, 154 S.E.2d 919, 919 (1967). Tharp did not prove that the article and broadcast were not substantially true. The dismissal of charges a year later is not relevant to that inquiry.

## IV. JUDGMENT SHOULD BE ENTERED FOR THE DEFENDANTS BECAUSE THE BROADCAST AND ARTICLE ARE PROTECTED BY THE FAIR REPORT AND NEUTRAL REPORTING PRIVILEGES OR WERE OPINION.

Because the broadcast and article are consistent with what was contained in official government records, they are protected by the fair report and neutral reporting privileges. *See, e.g., Reuber v. Food Chemical News, Inc.*, 925 F.2d 703, 712 (4th Cir. 1991); *George v. Kay*, 632 F.2d 1103, 1105 (4th Cir. 1980). The law does not require a "complete representation"; it merely requires that what is reported is substantially accurate. A rough and ready summary is protected by these privileges. *Yohe v. Nugent,* 321 F.3d 35, 44 (1st Cir. 2003). Additionally, whether the publications were based on public records that the Defendants had already obtained or viewed or not is irrelevant to application of these privileges. Any information in the official governmental reports would be protected from a defamation claim by virtue of it being in the public record regardless of whether the Defendants viewed the documents before publication. Every factual statement made in the publications was in one or more of the official governmental documents and therefore protected by the fair report and neutral reporting privileges.

Additionally, any statements in the publications that were opinions are not actionable as defamation. Of the six statements Tharp alleged to be defamatory in his Amended Complaint, two are clearly opinions. The opinion statements about which Tharp complains are:

a. "Time and therapy seem to be the two things helping the teen cope with the agony of what happened."

b. "The boy's mother wonders if her son will ever be the same again."

Opinions cannot be objectively proved true or false, and thus are constitutionally immune from liability. *See. e.g., Bidzirk, LLC v. Smith,* 2007 WL 3119445, at \*3 (D.S.C. Oct. 22, 2007).

The Defendants' publications were protected by the fair report and neutral reporting privileges, or were opinions. Accordingly, judgment should be granted to all Defendants.

## V. THE EVIDENCE SHOWED THAT THARP IS A GENERAL PUBLIC FIGURE, LIMITED PUBLIC FIGURE OR INVOLUNTARY PUBLIC FIGURE FOR PURPOSES OF THIS CASE.

The Defendants requested from Tharp discovery evidence about him that would prove his status as a general public figure, limited public figure, or involuntary public figure. He refused to provide any documents, and instead told the Defendants to look for the evidence on his website. The Defendants went to his website, and other websites to which they were directed via links. Tharp's website also directed the Defendants to books he had written. The Defendants obtained this information and entered or proffered it into evidence for all purposes including, without limitation, to show that Tharp is a general public figure, limited public figure, or involuntary public figure. This was in addition to the evidence previously provided to the Court in support of the Defendants' Motions to Dismiss and for Summary Judgment. That evidence is incorporated herein.

Tharp is a public figure because he has spent a lifetime inserting himself into the public eye. He has done so as the founder and leader of a foundation with a network of tens of thousands of medical caregivers and patients, as a gay activist, as a college swim coach at West Point, and as a prospective political candidate who was actively gearing up his campaign with polling on the eve of his arrest. Tharp is also a published author; one of his books is about his experience as a college swim coach. He is a public speaker for his foundations. He is a well-known activist in his community, a champion swimmer, and a highly visible crusader for his favorite political and social causes. He is outspoken and well-known in various arenas, including Congress, where he is a lobbyist. His own website trumpets that more than 56,000 people are in his foundation's network. In fact, he describes himself thusly:

> Louis Tharp, author, business executive, athlete, coach and executive director of the Global Healthy Living Foundation which he co-founded, finds a seat in the hall of

5

one of the Congressional office buildings during one of his frequent trips to
Washington to discuss healthcare, gay issues, and sports.

http://www.louistharp.com/ (image of Tharp sitting in halls of Congress omitted). On the front page of his website, Tharp describes himself as a social media entrepreneur; in other words, he makes his living by actively advocating issues, and being in the public eye:

> After running Clay Marketing & Public Relations, a successful international public relations, advertising, and marketing company for nearly 20 years, and working for some of the largest international PR and marketing agencies specializing in maritime, technology, health and dot coms, Louis Tharp became a social entrepreneur in 1999.
>
> He co-founded and acted as venture capitalist for CreakyJoints, an international service organization and social media site for people with arthritis, RedPatch, an advocacy organization for people with psoriasis, and CreakyBones, a social networking site for people with osteoporosis which are now a part of the Global Healthy Living Foundation, a 501(c)(3) non-profit patient advocacy an access to care organization. He is currently Executive Director.
>
> GHLF and Louis Tharp are also active in eliminating fail first practices within the healthcare industry where people are forced to fail on insurer-specified medications before they can take the prescription drugs their physicians prescribe.
>
> Previously, Louis Tharp was a contract writer for The New York Times and other daily newspapers. He published his first book, The Complete Manager's Guide to Promotional Merchandise (Dow-Jones Irwin) in 1989.
>
> As the swim coach for the U.S. Military Academy Triathlon Team (West Point, NY), he shared his training methods in his 2007 book, Overachiever's Diary: How the Army Triathlon Team Became World Contenders by Louis Tharp, published by Total Immersion.
>
> An elite swimmer himself, Louis Tharp won two gold and two silver medals at the 2006 Gay Games, and two silver and two bronze medals at the 2009 Outgames (www.Outgames.org) in Copenhagen.

http://www.louistharp.com/. Tharp has the ability to have his perspectives presented to the public through the media. He is not the typical private person without the expertise or means to defend himself in the media. All of the foregoing strongly favors the Court finding that Tharp is a public figure as a matter of law. *See e.g., Gertz v. Robert Welch, Inc.,* 418 U.S. 323 (1974); *Curtis v. Butts*, 388 U.S. 130, 164 (1967); *Wolston v. Reader's Digest Assoc.,* 443 U.S. 157, 164 (U.S. 1979); *Cepeda v. Cowles*

*Magazines and Broadcasting, Inc.*, 392 F.2d 417, 419 (9th Cir. 1968); *Rosanova v. Playboy Enterprises, Inc.*, 411 F. Supp. 440 (S.D. Ga. 1976); *Clements v. Gannett Co.*, 5 Media L. Rep. (BNA) 1657 (Sup. Ct. Monroe County 1979); *Lewis v. Coursolle Broad. Of Wis., Inc.* 377 N.W.2d 166 (Wis. 1985); *Hustler Magazine, Inc. v. Falwell,* 485 U.S. 46 (1988); *Coleman v. MacLennan, 78 Kan. 711, 739 (1908), quoted with approval in Garrison v. Louisiana*, 379 U.S. 64, 77 (1964); *Pritt v. Republican Nat'l Comm.,* 210 W.Va. 446 (2001).

As the foregoing shows, Tharp should be held to be a general public figure. At a minimum, he is a limited public figure or an involuntary public figure. Tharp was thrown into the public eye regarding kidnapping and sexual assault of a young male when he was arrested on those charges at the same time that he was conducting polls and discussing his impending candidacy for public office. His was no ordinary arrest. At the time of his arrest for sexual assault on a young male at a public swimming pool, Tharp was an adult male gay activist, the founder and executive director of a tax-exempt foundation with a network of over 56,000 persons across all 50 states, the former swimming coach of college age young men at the publicly owned and funded United States Military Academy, and a potential candidate for New York state senator. The story was a matter of public concern. Law enforcement issued a press release about his arrest. It was reported in every media outlet in the Myrtle Beach area, where it occurred, as well as a thousand miles away in his hometown of Upper Nyack, New York. Indeed, it was reported in his hometown multiple times and on multiple dates. As a result, Tharp is at least a limited public figure or an involuntary public figure for purposes of this case. *See e.g., Wells v. Liddy,* 186 F.3d 505 (4th Cir. 1999) (articulating test for involuntary public figure); *Gertz, infra; George v. Fabri*, 345 S.C. 440, 548 S.E.2d 868 (2001) (limited public figure).

In addition to the foregoing, Defendants also reiterate, adopt, and incorporate herein the contents of their motions and memoranda on the public figure issue in their other filings, including without limitation, their Motions to Dismiss and for Summary Judgment, and the arguments and

7

authorities presented in (i) Defendants' Memorandum in Support of Defendants' Motion for Summary Judgment, pages 24-35; (ii) Defendants' Memorandum in Reply to Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment, pages 9-12; (iii) pre-trial motions and documents and other evidence presented to the Court and/or proffered on the record on this issue; and (iv) all exhibits attached to these motions and memoranda.

## VI. THE JURY DETERMINED THAT THARP DID NOT PROVE CONSTITUTIONAL MALICE BY CLEAR AND CONVINCING EVIDENCE.

When a public figure, be it a general public figure, limited public figure or involuntary public figure, seeks to recover damages for an alleged defamatory falsehood, he must prove by clear and convincing evidence that the defendant acted with constitutional malice in publishing the statement. *See e.g., New York Times v. Sullivan*, 376 U.S. 254, 279,80, 84 S. Ct. 710, 726 (1964); *Time, Inc. v. Firestone*, 424 U.S. 448, 453, 55, 96 S. Ct. 958, 964-66 (1976); *Fleming v. Rose*, 350 S.C. 488, 494, 95, 567 S.E.2d 857, 860, 61 (202); *George v. Fabri*, 345 S.C. 440, 451, 548 S.E.2d 868, 874 (2001); *Elder v. Gaffney Ledger*, 341 S.C. 108, 533 S.E.2d 899 (2000). Constitutional malice requires proof by clear and convincing evidence that Defendants' publication "was made with actual malice – that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *St. Amant v. Thompson*, 390 U.S. 727, 728-31, 88 S.Ct. 1323 (1968) ("Reckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant, in fact, entertained serious doubts as to the truth of his publication.") In *St. Amant*, the United States Supreme Court stated:

> "Purporting to apply the *New York Times* malice standard, the Louisiana Supreme Court ruled that St. Amant had broadcast false information about Thompson recklessly, though not knowingly. Several reasons were given for this conclusion. St. Amant had no personal knowledge of Thompson's activities; he relied solely on Albin's affidavit, although the record was silent as to Albin's reputation for veracity; he failed to verify the information with those in the union office who might have known the facts; he gave no consideration to whether or not the statements defamed Thompson, and went ahead heedless of the

consequences and he mistakenly believed he had no responsibility for the broadcast because he was merely quoting Albin's words.

> These considerations fall short of proving St. Amant's reckless disregard for the accuracy of his statements about Thompson. "Reckless disregard", it is true, cannot be fully encompassed in one infallible definition. Inevitably its outer limits will be marked out through case-by-case adjudication, as is true with so many legal standards for judging concrete cases, whether the standard is provided by the Constitution, statutes, or case law. Our cases, however, have furnished meaningful guidance for the further definition of a reckless publication. In *New York Times*, *supra*, the plaintiff did not satisfy his burden because the record failed to show that the publisher was aware of the likelihood that he was circulating false information. In *Garrison v. Louisiana*, 37 U.S. 64 (1964), also decided before the decision of the Louisiana Supreme Court in this case, the opinion emphasized the necessity for a showing that a false publication was made with a "high degree of awareness of … probable falsity." 379 U.S. at 74. MR. JUSTICE HARLAN'S opinion in *Curtis Publishing Co. vs. Butts*, 388 U.S. 130, 153 (1967), stated that evidence of either deliberate falsification or reckless publication "despite the publisher's awareness of probably falsity" was essential to recovery by public officials in defamation actions."

Id. at 730-31; See also, *New York Times Co. vs. Sullivan*, 376 U.S. 254, 279-80 (1964); *Erickson v. Johns Street Publishers, LLC*, 368 S.C. 444, 466, 629 S.E.2d 653, 665 (2006). Tharp did not meet his burden of proof. See also the discussion of this issue in Defendants' Motions to Dismiss and for Summary Judgment and the memoranda in support thereof, which Defendants incorporate and reiterate herein. The jury determined that Tharp did not prove constitutional malice by clear and convincing evidence when it declined to award punitive damages. Because Tharp is a public figure and failed to meet his burden of proof of clear and convincing evidence of constitutional malice, he cannot recover actual damages. Accordingly, judgment should be entered for the Defendants.

Respectfully submitted,

s/Carl F. Muller
Carl F. Muller        Fed. ID No. 3602
Carl F. Muller, Attorney at Law, P.A.
607 Pendleton Street, Suite 201
Greenville, SC  29601
864-991-8904
carl@carlmullerlaw.com

Hannah Rogers Metcalfe, FED I.D.# 9943

Greenville, SC
June 17, 2014

Metcalfe & Atkinson, LLC
9 Toy Street
Greenville, SC  29601
864-214-2319
hmetcalfe@mpalawfirm.com

Attorneys for Defendants